IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 1:13-cr-402 |
| | ) |
| SAEED BAJWA | ) |
| | ) |

**DEFENDANT'S SUPPLEMENTAL
MEMORANDUM IN AID OF SENTENCING**

Defendant Saeed Bajwa, by and through undersigned counsel, respectfully submits this supplemental memorandum in aid of sentencing in order to address four key issues in response to arguments raised by the government in its sentencing submission:

(1) The government's attempt to try the dismissed conspiracy charge as part of a sentencing hearing violates Dr. Bajwa's Sixth Amendment rights because it would result in such a substantially more severe sentence.

(2) Consistent with the recent Fourth Circuit decision in *United States v. Flores-Alvarado*, 779 F.3d 250 (4th Cir. 2015), the Court should reject the government's assertion to include as relevant conduct the tax losses attributable to other donors because the government cannot prove that other donors' conduct was part of "jointly undertaken activity" by Dr. Bajwa.

(3) Dr. Bajwa is entitled to a 2-point downward adjustment for acceptance of responsibility because he has not falsely denied or frivolously contested any relevant conduct.

(4) The Court cannot adopt the government's loss figures because they lack any specific evidentiary basis, and do not constitute a "reasonable estimate" of loss.

Dr. Bajwa respectfully submits that this Court should be guided by the Probation Officer's recommendations on these issues, which considered and rejected the government's arguments.[1]

**1. Under the circumstances of this case, the government's effort to try Dr. Bajwa for conspiracy as part of a sentencing hearing violates Dr. Bajwa's Sixth Amendment rights.**

As we noted in our initial sentencing memorandum, the government's loss assertions would substantially increase the advisory Guidelines range applicable to Dr. Bajwa's sentencing – taking the range from 0 to 6 months up to 33 to 41 months. *See* Defendant's Sentencing Memorandum at 3 (Dkt. No. 69). Under these circumstances, the government's effort to prove this case under the more permissive rules and burden of proof applicable at sentencing would result in a violation of Dr. Bajwa's rights under the Sixth Amendment to the United States Constitution.

This issue arose recently in an opinion filed by three Justices of the United States Supreme Court. In *Jones v. United States*, 135 S. Ct. 8, 190 L. Ed. 2d 279 (2014), Justice Scalia (joined by Justices Thomas and Ginsburg) dissented from the Court's denial of *certiorari* in a case involving facts similar to those here. In *Jones*, the defendants were convicted of distributing controlled substances, but were acquitted of conspiracy to distribute controlled substances. Nevertheless, at sentencing, the district judge found that the defendants did participate in the charged conspiracy; instead of a sentence within

---

[1] Defendant also notes that the U.S. Sentencing Commission has announced its intention to revise the sentencing loss tables to account for inflation, which may alter the sentencing range for the relevant loss amounts. *See* http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150109_PRELIM_RF_amendments.pdf, at page 36.

Guidelines ranges between 27 and 71 months, the defendants were sentenced to 180, 194 and 225 months in prison.

In his opinion, Justice Scalia noted that the defendants had a strong case that, but for the fact-finding by the district judge, their lengthy prison sentences would be substantively unreasonable. "It unavoidably follows," Justice Scalia wrote

> that any fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to the longer sentence—is an element that must be either admitted by the defendant or found by the jury. It *may not* be found by the judge.

*Jones*, 135 S. Ct. at 8 (emphasis in original). Noting that the Supreme Court has not spoken to this issue, Justice Scalia was critical of Courts of Appeal that "have uniformly taken our continuing silence to suggest that the Constitution *does* permit otherwise unreasonable sentences supported by judicial factfinding, so long as they are within the statutory range." *Id.* at 9 (emphasis in original) (citing, among others, *United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008)).

Likewise, in this case, the sentence range suggested by the government would be substantively unreasonable in the absence of a finding by this Court that Dr. Bajwa participated in the now-dismissed conspiracy – a fact that Dr. Bajwa has not admitted (and continues to deny). Under *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007), and its progeny, the Sixth Amendment does not permit the government to avoid the requirement of proof beyond a reasonable doubt (and the rules of evidence) by seeking instead to use proof of a conspiracy as a means to elevate a defendant's sentence. If the government wished to hold Dr. Bajwa accountable for a conspiracy in which it alleges he participated, the government was bound to prove that conspiracy in a trial in which Dr. Bajwa would be entitled to the full panoply of trial

3

rights guaranteed by the Constitution. The Court should not let the government shortcut the process and deprive Dr. Bajwa of those rights.

**2. The government cannot prove that the losses it seeks to assign to Dr. Bajwa as relevant conduct were not only foreseeable, but also part of "jointly undertaken activity" by Dr. Bajwa.**

Even if this Court were to find no violation of the Sixth Amendment, it should find that the government has not proven that the losses it urges upon the Court were part of "jointly undertaken activity" by Dr. Bajwa. A recent opinion from the Fourth Circuit reinforces that it is necessary for the government to prove this, and not only that the losses were "foreseeable."

In *United States v. Flores-Alvarado*, 779 F.3d 250 (4th Cir. 2015), the defendant was convicted of conspiracy to distribute controlled substances. At sentencing, in calculating the amount of drugs involved—which drives drug sentences in the same way that loss drives fraud sentences—the district judge included not only the amount that the defendant had attempted to purchase, but also large amounts of drugs seized from two locations where the defendant was aware that the supplier was storing drugs.

In remanding the case for resentencing, the Fourth Circuit found that it was error for the district judge to do so. The Court noted that relevant conduct in conspiracy cases includes "all reasonably foreseeable acts and omissions or others in further of the jointly undertaken criminal activity." *Id.* at 255 (citing U.S.S.G. § 1B1.3(a)(1)(B)). But the Court went on to highlight a portion of the comments to this section of the Guidelines that limits the otherwise broad scope of this provision:

> [T]he scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. The conduct of others that was

4

> both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision. The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or was not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.

*Id.* (*quoting* U.S.S.G. § 1B1.3, cmt. n.2). The Court emphasized that "foreseeability is not enough; the acts of others may be attributed to a defendant only if those acts were foreseeable to the defendant and were within the scope of the defendant's agreement to jointly undertake criminal activity." *Id.* at 256. In *Flores-Alvarado*, the district judge had made no particularized findings as to the scope of the defendant's jointly undertaken activity, and therefore had not made sufficient findings to include the large amounts of seized drugs as falling within that scope. *See id.* at 257.

This approach to determining relevant conduct of alleged co-conspirators is reflected in the Guidelines themselves. As the comments to Section 1B1.3 observe, "[i]n order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." U.S.S.G. § 1B1.3, cmt. n.2. Those comment also make clear that the scope of "jointly undertaken activity" may be less broad than the scope of a conspiracy. Perhaps for this reason, the U.S. Sentencing Commission has released proposed revisions to §1B1.3(a)(1)(B) defining relevant conduct as "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity" that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course

of attempting to avoid detection or responsibility for that offense. *See* http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150409_PRELIM_RF_Amendments.pdf.

Likewise, in this case, even if the government could prove all of its assertions (which it cannot), and if the Court entered findings adopting those assertions, it would be improper to include in relevant conduct all of the loss asserted by the government. The government has proposed that Dr. Bajwa's relevant conduct should include tax losses associated with every person who donated to the Kashmiri American Council or the Society for International Help and was reimbursed. But to do so, the government would need to show not only that it was foreseeable to Dr. Bajwa that others were participating in a scheme to receive reimbursements for donations but still claim deductions, but that that conduct by each of those individuals was within the scope of jointly undertaken conduct by Dr. Bajwa. The government has not even suggested that it has such proof; the Court should therefore refuse to include all of these amounts in its calculation of loss even if the government overcomes the many other objections that Dr. Bajwa has proposed to such findings.[2]

---

[2] To the extent that the government asserts, instead, that the relevant conduct at issue was part of the common course of conduct with the offense of conviction, we have addressed that argument in our initial sentencing memorandum. The government has repeatedly asserted that Dr. Bajwa may be accountable for this relevant conduct under a *Pinkerton* theory of liability. In that regard, it is worth noting the Fourth Circuit's admonition in *Flores-Alvarado* that "[c]onspiracy liability, as defined in Pinkerton, is generally much broader than jointly undertaken criminal activity under § 1B1.3." 779 F.3d at 255 (quoting *United States v. Soto-Piedra*, 525 F.3d 527, 531 (7th Cir. 2008)).

6

   **3.** **Dr. Bajwa is entitled to an adjustment for acceptance of responsibility because he did not "falsely deny" or "frivolously contest" any fact relating to relevant conduct.**

The Court should also reject the government's assertion that Dr. Bajwa should not receive a downward adjustment for acceptance of responsibility. The government's argument is based on the assertion that Dr. Bajwa has admitted only *some* of the conduct charged in the indictment, and has not admitted the now-dismissed conspiracy charge from the indictment. Even if the conspiracy allegations were considered as relevant conduct, Dr. Bajwa's continued denial that he participated in a conspiracy is no basis for denying him the downward adjustment to which he is entitled.

The commentary to Section 3E1.1 specifically explains what conduct by a defendant with respect to relevant conduct may lead to a denial of this downward adjustment. The Sentencing Commission specifically explained that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G § 3E1.1 cmt. n. 1(A).

Here, Dr. Bajwa is confident that the Court will not find the conspiracy allegations urged by the government to be true. Moreover, even if this Court were to find such allegations to be true, Dr. Bajwa's denial of those allegations cannot be viewed as "frivolous" given the extremely scanty and unreliable evidence on which the government relies. In any circumstance, the Court should adjust Dr. Bajwa's Guidelines offense level downward for acceptance of responsibility as a proper reflection of his entry of a guilty plea in this case.

**4. The government has not provided any evidentiary basis on which the Court can make a "reasonable estimate" of loss.**

The government bears the burden of establishing its loss calculation at sentencing. "The Government must prove the amount of loss by a preponderance of evidence, and the district court must 'make a reasonable estimate of the loss, given the available information.'" *United States v. Pierce*, 409 F.3d 228, 234 (4th Cir. 2005); *quoting United States v. Miller,* 316 F.3d 495, 503 (4th Cir.2003). While the government is not required to substantiate each and every dollar of loss in order to meet its burden, it must employ calculations and methodologies which are based in demonstrable fact rather than random speculation. The court does not need to accept loss estimates that have no basis in established evidence.

The Fourth Circuit has struck down sentences in which the purported loss amount lacked an adequate evidentiary basis. In *United States v. Manrich*, 529 F. App'x 322 (4th Cir. 2013), a police officer pled guilty to conspiracy to obstruct, delay, and affect commerce by extortion for referring accident victims to a particular tow truck company, from which he received kickbacks. *Id.* at 324. As part of the loss calculation, the district court ruled that one-third of insurance claim amounts were fraudulent. *Id.* at 325. On appeal, the Fourth Circuit rejected the district court's finding that one-third of claims were fraudulent, finding "no evidentiary support in the record for the court's determination as to the percentage of fraudulent claim amounts." *Id.* The Court of Appeals thus vacated the sentence and remanded for resentencing. *Id.* at 326.

Even in cases where the government presents a mathematical basis for its estimated loss, the Court of Appeals will strike down the loss estimate if that calculation is not reasonable. In *United States v. Ahanmisi*, 324 F. App'x 258 (4th Cir. 2009),

defendant Isaac Ahanmisi was convicted of 19 counts of aiding and assisting in the preparation of false tax returns. *Id.* at 259. The government presented evidence that the IRS had audited a non-random sample of 619 returns, calculated the average tax loss of 164 of those returns, and multiplied that average loss by the 1,729 returns filed by the defendant in order to estimate the aggregate tax loss for sentencing purposes. *Id.* The Fourth Circuit rejected this loss estimate, noting that the average tax loss of the non-random sample of returns may not be representative of the entire universe of 1,729 returns filed by Ahanmisi. *Id.* at 259-260. The court further noted that the criteria used by the government "may have skewed the average tax loss toward a larger average loss per return than a random sample would have produced," and concluded that the "non-representative and potentially skewed average tax loss figure does not provide a 'reasonable estimate based on the available facts.'" *Id.* at 260. For that reason, the Fourth Circuit remanded for resentencing.

Similarly in *United States v. Mehta*, 594 F.3d 277 (4th Cir. 2010), tax preparer defendant Jiten Mehta contended that the district court erred in adopting the government's loss estimate because it calculated the tax loss by extrapolating from a non-random sample of audited returns from the last two years of the government's four year investigation. *Id.* at 282-283. The Fourth Circuit agreed that the non-random nature of the samples, which had been flagged for audit as being more likely to contain errors, were inappropriate for use in extrapolation. *Id.* at 283. The court held that the error to be harmless because it did not affect Mehta's sentence. *Id.*

Courts of Appeals will also strike sentences where the district court relies on a government loss calculation that fails to provide an evidentiary basis for the loss estimate.

9

For instance in *United States v. Reddeck*, 22 F.3d 1504, (10th Cir. 1994), defendant Edward Reddeck was sentenced to 43 months imprisonment for mail fraud based on his operation of non-accredited correspondence universities. *Id.* at 1506. The sentence included an 8 point enhancement for a loss estimate between $500,000 and $1 million. *Id.* at 1511. On appeal, the Tenth Circuit considered evidence presented to the district court at an evidentiary hearing. The Court of Appeals noted that an appropriate measure of loss might be to compare the students' tuition payments against the value of what they received, "a degree of dubious nature." *Id.* at 1513. However the Tenth Circuit found that the government failed to demonstrate the market value of such degrees, and therefore the government failed in its burden to show the net loss to students by a preponderance of the evidence. *Id.* The court thus remanded for supplemental factual findings as to the residual fair market value of an unaccredited degree. *Id.*

Here, the government has failed entirely to provide any basis for its assertions about the amount of loss. All the government appears to do is to pick a percentage of the donations in question and assert that percentage was invalid. This lacks any evidentiary basis, and cannot form the basis for a judicial finding about loss.

The government was not without options in seeking to prove loss in this case if it chose to assemble the necessary evidence to do so. For example, one methodology which regularly used by the government and approved by the courts in instances where a pattern of fraud is alleged is to calculate an average loss rate from a representative sample of verifiable events, and extrapolate that rate to the larger course of conduct. "In making a reasonable estimate of the total amount of tax loss where multiple instances of fraud are alleged, a sentencing court may extrapolate the average amount of loss from a sample of

10

audited returns and apply that average to the remaining returns for which the amount of loss is unknown." *United States v. Mehta*, 594 F.3d 277, 284-85 (4th Cir. 2010) (concurring). In analyzing whether such an extrapolation is appropriate under the circumstances, the court has an obligation to be "mindful of the need to assure that the legitimate is adequately distinguished from the criminal when extrapolated losses have been urged upon them." *United States v. Skodnek*, 933 F. Supp. 1108, 1116-17 (D. Mass. 1996).

This methodology is often applied in tax cases. In *United States v. Ukwu,* 546 F. App'x 305 (4th Cir. 2013), defendant Ukwu was convicted of twelve counts of aiding and assisting in the preparation of false income tax returns. *Id.* at 306. Among Mr. Ukwu's illegal acts in preparing his clients' returns were claiming fictional business losses and false charitable deductions in order to garner tax benefits. *Id.* At sentencing, the government estimated that Mr. Ukwu's criminal behavior created tax losses of $2.1 million. *Id.* It calculated this estimate by calculating a fraud rate derived from small random and non-random samples from 1,000 tax returns prepared by Mr. Ukwu. *Id.* at 307. The government used those samples to calculate a fraud rate of approximately 90%, which it then applied to the $16.4 million in claimed Schedule C losses in order to reach a reasonable estimate of the loss. *Id.* at 308. On appeal, Mr. Ukwu challenged his sentence of 51 months in prison, arguing that the district court erred in estimating the amount of tax loss he caused. *Id.* at 306. The Fourth Circuit upheld the government's loss estimate, noting that the government "went out of its way" to collect a random sample of returns to compare to the non-random sample in calculating the loss percentage. *Id.* at 309. The Court of Appeals further noted that the tax returns exhibited a "suspicious pattern" of

11

receipts, expenses, and alleged employers. *Id.* at 310. Based on the totality of evidence presented by the government, the Fourth Circuit upheld the methodology applied at sentencing.

The extrapolation method was also used in *United States v. Conner,* 262 F. App'x 515 (4th Cir. 2008), in which the defendant, a medical transportation provider, was convicted of multiple counts of health care fraud and sentenced to 151 months imprisonment. *Id.* at 516. The district court conducted a two day evidentiary hearing to determine the loss amount at the sentencing. *Id.* During that hearing, the government presented testimony of a medical fraud investigator who analyzed a sample of 230 claims, and found that in all but 14 claims there was no medical necessity for ambulance transport. *Id.* at 519. The government then presented testimony from a statistician who extrapolated the findings to estimate the loss amount to a 90% confidence level. *Id.* The Fourth Circuit upheld the district court's calculation of loss based on the government's methodologies. *Id.* On appeal, the defendant argued that the samples used to extrapolate to the total loss figure were not examined for fraud, but only for medical necessity, and thus the government's evidence was unreliable. *Id.* However, the Fourth Circuit upheld the loss estimate, noting that the "pervasive nature of the fraudulent scheme, as well as the methods used by Conner, justified the district court's attribution of fraud to all of the sample claims." *Id.*

In *United States v. Otuya,* 720 F.3d 183, 191 (4th Cir. 2013) *cert. denied,* 134 S. Ct. 1279, 188 L. Ed. 2d 312 (2014), the Fourth Circuit upheld the district court's estimate of intended loss where the government had constructed a detailed spreadsheet "describing 78 specific losses that were intended in the course of the fraud scheme" and the court

12

then "selected the 33 particular losses that it found to be in furtherance of the conspiracy and reasonably foreseeable to [the defendant], either because he personally perpetrated the underlying fraudulent transactions or because he had a close working connection with the conspirators who did."  The Court of Appeals concluded that this was "strong evidence" that the court did not clearly err in its loss calculation. *Id.*

The common thread to all of these cases upholding loss estimates is that the government was able to point to scores of data points establishing a pattern of conduct which resulted in demonstrable loss.  Based on that hard evidence of loss, the government was able to calculate an average rate of loss over time, which could be extrapolated and applied to periods for which evidence was not available or was not specifically calculated.  This evidence-based methodology thus results in a "reasonable" estimate of loss. This approach is a far cry from that invoked by the government in this case.


Dated:  April 17, 2015

Respectfully submitted,
    */s/ David B. Deitch*
David B. Deitch
Virginia Bar No. 74818
Email: ddeitch@ifrahlaw.com
IFRAH PLLC
1717 Pennsylvania Avenue, NW
Suite 650
Washington, DC 20006
Tel. 202-524-4140
Fax 202-524-4141

*Attorney for Defendant Saeed Bajwa*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 17, 2015, I electronically transmitted the foregoing document to the clerk of the Court using the CM/ECF system for filing. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                            */s/ David B. Deitch*
                                                            David B. Deitch