1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division
```

```
---------------------------------:
                                 :
                                 :
UNITED STATES OF AMERICA,        :
                                 :
                                 :
     vs.                         :    Case No. 1:13-cr-402
                                 :
                                 :
SAEED BAJWA,                     :
             Defendant.          :
                                 :
---------------------------------:
```

```
                         PARTIAL TRANSCRIPT
                         (Court's Rulings)

                           April 21, 2015

                   Before:  Liam O'Grady, USDC Judge
```

APPEARANCES:

Allison Ickovic and Gordon D. Kromberg,
Counsel for the United States

David B. Deitch and Sarah Koch, Counsel for the Defendant

The Defendant, Saeed Bajwa, in person

1       NOTE: After the presentation of evidence and
2  argument in the matter is concluded, the case continues as
3  follows:
4       THE COURT: All right. Thank you, Mr. Deitch.
5       All right. Well, there are two aspects to the case.
6  One is the intercepts and the weight that I should consider
7  those intercepts in conjunction with the witnesses, as well as
8  the proffered affidavits from both parties, but mainly from Mr.
9  Deitch, explaining why some of the language in those intercepts
10 was confusing.
11      And the second aspect, and which I think drives the
12 train here, is whether in fact there is evidence that Dr. Bajwa
13 received reimbursements through payment of stock, because
14 that's the only evidence that there is. There is no evidence
15 that he received any other form of remuneration of the stock.
16      The Government in good faith studied the evidence
17 that they recovered from Dr. Bajwa's home and office -- I am
18 not sure if they searched the office. But they had a detailed
19 series of documents. They had what counsel has talked about,
20 his daybook. They used it, they analyzed it with what they
21 knew, and they came up with the information that they placed in
22 Exhibit E of their submission, page 5, which they placed great
23 weight on.
24      Subsequent to that Mr. Deitch and his team have fully
25 explained why the daybook does not represent what the

1  Government believes it does.
2      And the reason I asked the special agents about
3  whether they had seen these documents is I wanted their
4  response.  And this is the first time they are seeing them.
5      I find that the exhibits, which start I think at 4 or
6  5, that Mr. Deitch has forwarded, are authentic.  They are
7  corroborated by dates, events, account numbers, bank numbers.
8  They fully explain and the Defendant's Exhibit 1 and 2
9  demonstrate without question that Dr. Bajwa paid separately for
10 the stock, and also gave significant amounts of money to SIH
11 and KAC as charitable contributions, and that none of the stock
12 came back as a reimbursement.
13     And having found that, then we look at, well, what
14 else was going on.  And we have the intercepts.  And there is
15 conversation with Zaheer Ahmad.  Zaheer Ahmad has zero
16 credibility.  He was running five different scams at the same
17 time.  He was manipulating money.  He was telling people
18 whatever he thought would further his own agenda.
19     And certainly the evidence in much of those
20 intercepts is inconsistent with what Dr. Bajwa had done.  Mr.
21 Deitch has proven that Dr. Bajwa did not engage in a scheme to
22 get reimbursement of his charitable contributions through stock
23 returns.
24     So Mr. Ahmad telling everybody, do what Bajwa did,
25 and explaining what he did, that is pure boloney.  There is

1  absolutely no truth to it because it didn't exist, he didn't do
2  that. And the evidence that is before me demonstrates without
3  question that he did not do that.
4  　　　　And then we have the testimony of Dr. Sethi, who was
5  really not damning at all to Dr. Bajwa. And his own failure of
6  recollection is enough to give little weight to his testimony
7  when he is cross-examined on whether he told the agents
8  different versions of events during the course of the many
9  debriefings. He just says, I don't know, frankly. I may have,
10 I may not. I can tell you that I am doing the best I can to
11 tell the truth today.
12 　　　　And I don't doubt that Dr. Sethi has done so. He was
13 in a tough position with making sure that he was as squeaky
14 clean as he possibly could be so that he would not be embroiled
15 in this conspiracy. He did what I am sure his counsel told him
16 to do, and as a result was not charged, and paid I am sure a
17 good price to make sure that he would not be involved in any
18 ongoing consideration of prosecution.
19 　　　　So once we look at those intercepts, we see that they
20 are confusing. And I understand that I have got to consider
21 carefully the weight to be given to Ahmad's wife as to whether
22 that was a loan or not a loan.
23 　　　　You know, the Government, it got to Pakistan, it had
24 limited authority to go in different locations. It had
25 probably limited authority to talk to Dr. Bajwa's brother,

1  Ahmad's family.  But let's not lose sight of the fact that it's
2  the Government's burden to prove by a preponderance of the
3  evidence that Dr. Bajwa was involved in this conspiracy and
4  prove it the way that they best decide that they are going to
5  do it.
6         But I find that they have failed to meet their
7  burden.  I don't find that there is a conspiracy based on the
8  evidence that I have reviewed.  Dr. Bajwa was not correct in
9  some of the responses he gave to the FBI.  I think it's
10 disturbing that he is a very bright man telling the FBI that he
11 became a member of the Board of Directors in 2010 when he had
12 been so since 2006.
13        It doesn't take much of a leap of faith to believe
14 that he was trying to minimize his own involvement in the
15 hospital at a time when a major contributor, Mr. Yassin Kadi
16 had been identified as a terrorist on the U.S. lists.
17 Certainly he may or may not have done that intentionally.
18 That's not enough to change what we are doing here today.
19        And the tax return information and the dividends, it
20 is so collateral that I really don't place much import on it at
21 all.  It is clear that taxes were taken out in Pakistan for the
22 dividends.  And whether he received accurate advice as to
23 whether to declare it and identify it, and also the foreign
24 bank accounts, is just too collateral to have any relevance to
25 our relevant conduct analysis here.

6

1  So I find that there is no conspiracy that Dr. Bajwa
2  entered into with the other members of the -- those who were
3  involved with straw donors. And I find that the Guideline
4  calculation as a result has been properly calculated.
5  I believe that he deserves acceptance of
6  responsibility as well. The information that the Government
7  relies on that he falsely denied membership in the conspiracy
8  or getting the reimbursements has been proven to my
9  satisfaction to be the truth and, therefore, certainly it's not
10 a reason to withhold acceptance of responsibility.
11 So the Guideline is zero to six months. And Dr.
12 Bajwa has no prior criminal record.
13 And I will hear from the Government on what sentence
14 they believe is appropriate given my findings.
15 MS. ICKOVIC: Your Honor, you've calculated the
16 Guidelines to be zero to six months. Now under the 3553
17 factors you can consider his credibility, his other conduct,
18 all other sorts of factors. But I think you have heard more
19 than enough argument from me to aid you in assessing that.
20 Unless you have questions for me.
21 THE COURT: All right. Are you asking for a term of
22 incarceration still based on your belief that he has not been
23 totally honest with the Government?
24 MS. ICKOVIC: I would think that a term of
25 incarceration is warranted, Your Honor. He has not been honest

1   with the Government at all.
2          THE COURT:  All right, thank you.
3          All right, Mr. Deitch.
4          MR. DEITCH:  Thank you, Your Honor.
5          Your Honor, first, obviously you have seen our
6   submissions.  150 letters and a videotaped discussion as well
7   that hopefully give you have a very good sense of the kind of
8   person who Dr. Bajwa is.  And I hope that those alone, in
9   addition to the remarks I'm going to make, will persuade you
10  that there is no notion of justice that can justify sending Dr.
11  Bajwa to jail based on the facts that you have before you
12  today.
13         As you know, Your Honor, Section 3553(a) directs you
14  to impose a sentence that is sufficient but not greater than
15  necessary to comply with the purposes of sentencing.  And the
16  factors that the statute directs you to all point towards a
17  sentence of probation as being more than sufficient.
18         As for the nature and circumstances of the offense,
19  what you are left with is the narrow omission of a statement to
20  which Dr. Bajwa admitted as part of his plea.  It is obviously
21  serious, and Dr. Bajwa accepts full responsibility for having
22  not been fully truthful in his interview.  But the character of
23  Dr. Bajwa vastly outweighs that.
24         As you can tell from the letters, Dr. Bajwa is a man
25  of fine character.  He is generous with money.  In addition to

1  the very substantial donations he made to KAC and to SIH, as I
2  believe one of the exhibits showed Dr. Bajwa over the course of
3  the years covered has made donations totalling $1.2 million to
4  other charities here in the United States and abroad, most of
5  which I believe are here in the United States.
6        In addition, he is generous of heart and spirit.  And
7  that is demonstrated or reflected in part by what you see
8  before you today, which is a courtroom full of his family, full
9  of his friends, full of his patients, full of his colleagues.
10 There are numerous doctors who have traveled distance to be
11 here.  There are family members who have traveled from as far
12 as Pakistan.
13       There are a number of patients who have no
14 relationship with Dr. Bajwa other than the fact that they are
15 eternally grateful for the kind and skilled treatment that he
16 gave them, and it was enough that they wish to be here to
17 support him.
18       His kindness in treating patients in situations in
19 which people face death and disfigurement, as you heard
20 reflected over and over in the letters and in the videotapes,
21 is really remarkable.  And I watched the videotape again last
22 night, and what jumped out at me is how often the word
23 "extraordinary" came up in the video.
24       Whatever his faults, for Dr. Bajwa is a human being,
25 he is extraordinary in his own way in his devotion to his

1   patients and to medicine, not just as a profession, but as a
2   calling.
3              And as both the letters indicated and as was
4   discussed in the videotape as well, Dr. Bajwa is badly needed
5   both in the particular hospitals where he practiced and in that
6   region in order to ensure that patients who need that type and
7   level of care will continue to receive it.
8              And the reason I mention this, Your Honor, is that
9   your sentence will impact how the licensing board in New York
10  proceeds with this case.  And a sentence of probation will send
11  a message to the licensing board that Dr. Bajwa should be
12  trusted to continue to practice medicine.
13             And that's an important part of the pitch here, which
14  is that there are so many people who benefit from his presence
15  in that community both personally and professionally, that he
16  should be permitted to continue that.
17             A sentence of probation also will sufficiently
18  reflect the seriousness of the offense.  Dr. Bajwa will be a
19  felon from now on, and that is a very big thing to a white
20  collar person who has never dealt with the criminal justice
21  system.
22             The other aspects of that don't really apply.  I
23  don't think that Your Honor believes that Dr. Bajwa needs
24  further deterrence to ever be involved with this or to deter
25  others.

10

1        And there is just really no notion that I can imagine
2   that makes sense to require that Dr. Bajwa spend time in jail
3   as a result.  He has been on notice that he is in the target
4   crosshairs of the Government for almost four years.
5        And you saw both in the Probation report and in some
6   of the letters the stress and depression and things that he has
7   gone through.  Which, while they are a normal part that many
8   defendants suffer, are also a form of punishment in and of
9   themselves, and he has suffered in that way.  And he does have
10  sincere remorse.
11       The last thing, Your Honor, is that the statute in
12  section (a)(6) also directs you to avoid disparities with
13  similarly situated defendants.
14       Dr. Razaq, who admitted participating in the
15  conspiracy and against whom there was very clear evidence he
16  had participated in the conspiracy to receive reimbursements,
17  received a sentence of probation.
18       The other defendants, who are related in this case
19  who committed far graver offenses involving the movement of
20  millions and millions of dollars, received very short sentences
21  of incarceration.  I suggest to you that fitting Dr. Bajwa
22  within that framework also points to a sentence of probation.
23       Your Honor, the purpose of sentencing Dr. Bajwa at
24  this time is to fit the punishment to both the crime, but also
25  to the man before you.  And I suggest to you that those 150

1   letters speak far better than I can about all of the reasons
2   why you should put him on probation and permit him to continue
3   both his time with his family and friends and his profession.
4       And we ask that you show that leniency, that you
5   sentence Dr. Bajwa to probation.
6       THE COURT: All right. Thank you, Mr. Deitch.
7       Dr. Bajwa, this is your opportunity to tell me
8   anything you would like to, sir, before I sentence you. Please
9   remain there when you're done.
10      THE DEFENDANT: Thank you for Your Honor to give me a
11  chance.
12      I am truly humbled to be standing in front of you
13  today to plead my case. I have been in many situations as a
14  professional to go to the court as a witness or as an expert,
15  but not in my ever life I imagined being here.
16      No words can express the remorse I feel for my
17  actions that led to my felony plea last year. I am also
18  cognizant of the consequence of my actions and the toll this
19  has taken on my family over the last more than three years.
20      Your Honor, I grew up in a very poor part of Pakistan
21  where most of the people have little to no means for good
22  education and healthcare. I was very fortunate to have gotten
23  an opportunity to become a doctor, and later an extreme
24  privilege to immigrate to a great country, the United States,
25  in 1980.

1             My parents, who came from a very modest background,
2  often reminded me of my duty to help others who were not so
3  fortunate that I was.  This was the driving force which drove
4  me to donate to the number of organizations that worked in
5  Pakistan to establish the schools and the hospitals that
6  catered to the needy.
7             As is very clear, the main offense which I had was I
8  sent the money to all the education institutions, including
9  IQRA, run by my own family.  Tameer-e-Millat was started by my
10 father over 65 years ago, and we still kept the torch to keep
11 the education for the people because that's the only way we can
12 pull the people out of poverty.
13            I also wish to emphasis that I contributed even a lot
14 more to a number of institutions that do charitable work in the
15 United States and southern tier of New York, many universities,
16 many colleges, many schools, Islamic Center, many synagogues,
17 many churches, and interfaith institutions.
18            My colleagues will attest to you to the fact that I
19 am one of the hardest working surgeons in Upstate New York, and
20 that I work tirelessly to ensure that my patients get the
21 absolute best care.  I assure you that you that I do so
22 regardless of whether the patients have the means to pay for my
23 services or not.
24            With that, I am blessed to have a very successful
25 medical practice that gives me the means to assist those in

1   need.

2          I accept that I made a grave mistake of making a
3   false statement while being interviewed by federal agents on
4   July 19, 2011.  I regret it.  However, it was never my intent,
5   Your Honor, to defraud the United States in any way, and
6   certainly never my intent to financially benefit from that in
7   any way.

8          God gave me enough money.  They were very small
9   amounts, if ever.  I was the one donating hundreds of thousands
10  of dollars every year to charities here and abroad.

11         As a person of faith, I have always viewed my life as
12  having a high purpose.  I love my work.  I believe that God has
13  placed me in this position to help those with severe medical
14  needs.  Some of the gifts God gave me I believe are given for
15  some reason.

16         I plead for the opportunity to continue to serve the
17  Upstate community, and beg you to please give me the ability to
18  do so.

19         In closing, I wish to state that I am extremely sorry
20  for my actions, and humbly seek leniency from you when you
21  decide my sentence.

22         Thank you, Your Honor.

23         THE COURT:  All right.  Well, you got -- please stay
24  there.  You got a little too close to the action here and
25  raised the suspicions of the Government, and with good reason.

14

1                I have made my findings here today.  Your actions
2    were not perfect, but they weren't criminal, further criminal
3    behavior, in my estimation.
4                So I am looking at a zero to six Guideline range, a
5    five-year maximum penalty under the statute.  And in fashioning
6    a sentence, I looked at whether community service would be
7    appropriate.  But every day of your life you are involved with
8    community service.  It would be no penalty to ask you to do
9    more.
10               I looked at home confinement as a requirement.  And
11   again all I'm doing is making it more difficult for you to get
12   out into your community and see the people that are here with
13   you today.
14               Let me say a word.  I know some of you have come from
15   far away.  I assume that many have written the testimonials
16   that I received.  They were heart rendering.  They spoke
17   volumes about the doctor, and they were very important to me.
18   Your presence here today is very important to me in determining
19   what the appropriate sentence should be in this case.
20               I have a wide range of sentences that I can impose,
21   and I look often not either to the defendant or the Government,
22   but to what the community believes that defendant represents to
23   his community.
24               And it's absolutely clear that the community believes
25   that Dr. Bajwa is a treasure, and that his continued activities

1  in the community are of vital importance, not just to the
2  mosque or to the hospital, but in the community as a whole for
3  what he has done.
4          And I considered that heavily in determining what
5  sentence I thought was appropriate.  As Mr. Deitch said, I also
6  looked at disparity because there are other individuals who
7  have come in here and have gone to the penitentiary as
8  tangentially involved in this case, or at least in this
9  investigation and for their own behavior.  But I see no
10 disparity in sentencing as requested Dr. Bajwa to a term of
11 supervised probation.
12         I am going to sentence you to two years of supervised
13 probation.
14         If the Government wishes that you have no contact
15 with specific individuals, you will submit that to the
16 Probation Office.  And you won't be permitted -- I will give
17 you a voice in explaining why one or more of the names on the
18 list you should be allowed to contact.  But if the Government
19 seeks to keep you from being involved with certain individuals
20 who were involved in this case or in related cases, then they
21 will submit that list to the Probation Office, and that will be
22 one of your conditions, special conditions, that you have no
23 contact with those individuals.
24         You will provide the Probation Office with any
25 requested financial documents, although moving forward they

1  have all the documents to the present date.

2          I am going to impose a fine of $25,000, which will be
3  due within six months of sentencing in amounts to be determined
4  by the Probation Office.

5          I will not require that you undergo any substance
6  abuse testing or treatment as that is not necessary.  Otherwise
7  you will be under the standard conditions of supervised
8  probation that will be identified by the Probation Office.
9  Which will be things like don't move without permission,
10 obviously don't commit any future criminal offenses.

11         I wish you -- and before I forget, the Probation
12 Office is closed tonight.  You can contact the Probation
13 officer tomorrow by telephone if you're going to be leaving the
14 area and receive further instructions on how to proceed.  The
15 case will be transferred up to New York for the supervision,
16 which should happen pretty quickly.

17         I hope that you will continue to serve your
18 community.  You have got many good years -- we're not too far
19 apart in our age, and I'm hoping that I have a few good years
20 to give to my community.  And I wish you good health, sir, and
21 that you continue to serve your community as you have.

22         And I thank God for people like you, you're a
23 treasure.  And it's -- you know, you come from a place where
24 you especially appreciate what's possible, and you have come a
25 long way.  And continue to help those that need it.

1   Thank you, counsel. And we will enter an order.
2   And we are in recess.
3   THE DEFENDANT: Thank you, Your Honor.
4   MR. DEITCH: Thank you, Your Honor.

----------------------------------------------------
PARTIAL TRANSCRIPT CONCLUDED

18   I certify that the foregoing is a true and
19   accurate transcription of my stenographic notes.

23   /s/  Norman B. Linnell
     Norman B. Linnell, RPR, CM, VCE, FCRR